# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 22-1608V

|  |  |
|---|---|
| MELISSA LITTLE,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: September 3, 2025 |

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for Petitioner.

*Parisa Tabassian*, U.S. Department of Justice, Washington, DC, for Respondent.

**RULING ON ENTITLEMENT**[1]

On October 27, 2022, Melissa Little filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner amended her Petition on January 25, 2024. ECF No. 37. Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") following an influenza vaccine received on October 13, 2021. Amended Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find that Petitioner more likely than not suffered the residual effects of her alleged vaccine-related injury for more than six months, and

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

that she has satisfied all of the requirements for a Table SIRVA claim. Therefore, Petitioner is entitled to compensation under the Vaccine Act.

## I.    Relevant Procedural History

On February 1, 2024, Respondent filed his Rule 4(c) Report, contending therein that "Petitioner has not demonstrated by preponderant evidence that she suffered alleged SIRVA-related symptoms persisting beyond six months after vaccination (April 2022)." Rule 4(c) Report at 6. Petitioner subsequently filed a Motion for Ruling on the Record ("Mot.") on March 15, 2024. ECF No. 40. Respondent filed a response ("Resp.") on May 3, 2024, and Petitioner filed a reply ("Repl.") on May 9, 2024. ECF No. 41, 42.

The matter is now ripe for adjudication.

## II.   Relevant Facts

### A.  Medical Records

Petitioner received a flu vaccine in her right arm at on October 13, 2021. Ex. 1 at 4, 7-8. Twelve days later, on October 25, 2021, she had a telemedicine visit with her primary care physician ("PCP") where she reported right shoulder pain at the injection site where she received her flu vaccine twelve days prior. Ex. 2 at 25. She was advised to use ice and over-the-counter medications for pain and to return if her symptoms persisted or worsened. *Id*. at 26.

Petitioner returned to her PCP on November 3, 2021, with continued "right shoulder pain since getting a flu vaccine on October 13, 2021." Ex. 2 at 27. Her range of motion was "slightly limited" on exam. *Id.* Petitioner was advised to have an MRI and consult with an orthopedist. *Id.* at 28. The MRI revlealed infraspinatus tendinosis without a discrete rotator cuff tear. *Id* at 97-98.

Petitioner saw an orthopedist on November 18, 2021 (one month after vaccination). Ex. 7 at 3. She reported constant right shoulder pain "after getting her influenza vaccine on 10/13/2021," that caused difficulty with dressing, sleeping and reaching behind her. *Id*. Petitioner was given meloxicam for pain, was referred to physical therapy, and was given a home exercise program ("HEP"). *Id*. at 8.

Petitioner had a telemedicine visit with her PCP on December 20, 2021, for a sinus infection. Ex. 2 at 28-29. She returned on April 12, 2022 for shortness of breath. *Id*. at 29-30. 225. Petitioner saw her PCP again on May 13, 2022, for a sick visit. *Id*. at 225-26. Petitioner then saw her doctor on May 25, 2022, when she tested positive for Covid-19. *Id*. at 226-27. These records do not contain any references to shoulder pain.

On May 27, 2022 (now over seven months after vaccination – and almost six months since last treatment), Petitioner returned for a telehealth visit with her orthopedist. Ex. 7 at 10. She reported that she had been recovering from Covid-19. *Id*. She added that although she did not do formal physical therapy, she had doing the "prescribed home exercise programs on a regular basis" for her shoulder, which had helped. *Id.* Although she had seen improvement, she continued to have pain with certain movements, including holding her son. *Id*. The doctor reiterated that Petitioner's "R shoulder pain began acutely after receiving [a] vaccine." *Id*. at 12. Petitioner was instructed to continue the HEP and to attend formal physical therapy if her pain continued. *Id.* at 13.

Between June and October 2022, Petitioner had several medical appoinments for unrealted health issues. Ex. 2 at 220-225, 228-230; Ex. 4 at 4-7, 10-12; Ex. 11 at 6-8. On October 3, 2022, Peittioner was seen for a reaction to her Covid-19 vaccine on her right upper arm. *Id*. at 224-25. There is no documented complaint of shoulder pain in any of these records.

On October 4, 2022, Petitioner saw her orthopedist for right sided neck pain that had been "gradually worsening over the past several months." Ex. 19 at 4. She also reported that the "shoulder pain and restriction of ROM from her last visit [had] resolved." *Id.* On exam, Petitioner shoulder range of motion was normal and impingement testing was negative. *Id*. at 6-7. She was diagnosed with cervicalgia and referred to physical therapy. *Id.* at 9.

Petitioner saw a chiropractor for her neck pain on October 26, 2022. Ex. 14 at 3. Petitioner reported that her flu shot "a few months prior" caused bursitis, "which may be the cause of upper trap tightness." *Id.*

### B. Witness Testimony

Petitioner filed a declaration on January 25, 2024, in support of her claim. Ex. 21. She explained that she "was set to start physical therapy in December of 2021," after her first visit with the orthopedist, but instead took steps to avoid contracting the Omicron variant of Covid-19 that emerged at the time. *Id*. at ¶7. She stated that she removed her two-year-old son from daycare and avoided going anywhere other than work to protect her family, which included her immunocompromised mother and mother-in-law. *Id*. Petitioner stated that she continued the home exercises given to her by the orthopedist during this time, and saw improvement, but not resolution of her shoulder pain. *Id*. at ¶8. After returning to her orthpedist, she continued the home exercises, but, at some point, began having neck pain that she atrributed to her shoulder injury. *Id.* at ¶10.

Bradley Little, Petitioner's husband, also filed a declaration in support of Petitioner's claim. *See* Ex. 22.

### III.     Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove by a preponderance of the evidence the matters required in the petition by Vaccine Act Section 11(c)(1). The Vaccine Act also requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act §11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. §13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later

4

testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV. Findings of Fact - Severity

To satisfy the statutory severity requirement, Petitioner must demonstrate that her symptoms more likely than not continued until at least April 13, 2022 – six months after the onset of her pain on October 13, 2021. The record establishes (and the parties agree) that Petitioner treated her right shoulder pain through November 18, 2021, just over one month after her vaccination – and then did not seek shoulder-related care again until May 27, 2022. Respondent contends that because Petitioner had intervening medical appointments where she did not mention shoulder pain, her purported vaccine injury "was not an active issue." Resp. at 6-8.

During Petitioner's first appointment with her orthopedist, she was given an HEP and referred to formal physical therapy. Ex. 7 at 8. Although she did not complete the planned therapy, she has provided a credible explanation for why she did not seek further treatment. Petitioner explained that she was ready to begin the recommended physical therapy treatment in December 2021, but chose to delay due to the emergence of the

5

Omicron variant of Covid-19.[3] Ex. 21 at ¶7. She stated that during that time, she and her family took steps to avoid exposure, including taking her son out of daycare, going only to work, and remaining masked. *Id*. Petitioner also stated that she continued to perform the home exercises given to her by her orthopedist while she was not receiving formal treatment, which provided some relief, but did not resolve her shoulder pain." *Id*. at ¶8.

When Petitioner returned to treatment after the six-month gap, she reported that she had been doing the "prescribed home exercise programs on a regular basis" since her last visit. Ex. 7 at 10. Petitioner also noted that she had recently had Covid-19. *Id.* In her assessment, the doctor noted that the pain "began acutely after receiving [a] vaccine." *Id*. at 12. She went on to say that Petitioner's pain was caused by "local trauma to the deltoid muscle which caused a constellation of symptoms consistent with impingement." *Id.* There is no evidence that Petitioner's shoulder pain had resolved prior to her May 27, 2022 appointment (more than seven months after her vaccination) and no evidence in the record of an alternative cause for her symptoms since her flu shot. In fact, once Petitioner's shoulder pain had resolved, she reported it to her orthopedist on October 4, 2022. *See* Ex. 19 at 4. Thus, the evidence suggests that Petitioner's pain resolved sometime between the two visits in May and October of 2022 – both of which satisfy the severity requirement.

Respondent highlights the fact that Petitioner had telemedicine visits during the intervening period during which she did not complain of shoulder pain. Resp. at 6. But, the various medical visits cited by Respondent were not necessarily occasions on which Petitioner would have been expected to address her shoulder problem. All of the visits were with Petitioner's PCP and for more acute medical issues, such as sinusitis, shortness of breath, upper respiratory infection, and Covid-19. *See* Ex. 2 at 28-30; 225-27. As Petitioner was already under the care of an orthopedist, it is reasonable to expect that she would not seek further care for her shoulder pain from her PCP, particularly when addressing acute illness.

Thus, after consideration of the entire record, I find that the evidence preponderates, just barely, in Petitioner's favor on the issue of severity. Of course, the substantial gaps in treatment, coupled with the *very minimal* treatment received, will bear significantly on any pain and suffering award – and Petitioner should keep this in mind when making any demand (since this case will unquestionably not merit anything close to a substantial pain and suffering award).

---

[3] "Omicron was the predominant strain in the U.S. by late December" 2021. https://www.yalemedicine.org/news/5-things-to-know-omicron.

### V.     Ruling on Entitlement

#### A.     *Requirements for Table SIRVA*

Respondent concedes that "the requirements set forth in the Table's Qualifications and Aids to Interpretation for a Table SIRVA are otherwise satisfied." Resp. at 9; *See* 42 C.F.R. § 100.3(c)(10)(i-iv). Therefore, I find that Petitioner has provided preponderant evidence to establish that she suffered a Table SIRVA injury.

#### B.     *Additional Requirements for Entitlement*

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that Petitioner received a flu vaccine in her right arm on October 13, 2021. Ex. 1 at 7; Section 11(c)(1)(A) (requiring receipt of a covered vaccine). Additionally, Petitioner has stated that she has not filed any civil action or received any compensation for her vaccine-related injury, and there is no evidence to the contrary. Ex. 12; Section 11(c)(1)(E) (lack of prior civil award). And as noted above, I have found that severity has been established. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

### Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

> **s/Brian H. Corcoran**
> Brian H. Corcoran
> Chief Special Master